Margaret E. Townsend (OSB No. 144463)
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211
tel: (971) 717-6409
mtownsend@biologicaldiversity.org

Andrew Baloga (OSB No. 245343)
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211
tel: (971) 717-6402
dbaloga@biologicaldiversity.org

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

**PORTLAND DIVISION**

CENTER FOR BIOLOGICAL DIVERSITY; FRIENDS OF THE COLUMBIA GORGE; KLAMATH-SISKIYOU WILDLANDS CENTER,

Plaintiffs,

v.

U.S. FISH AND WILDLIFE SERVICE; BRIAN NESVIK, in his official capacity as Director of the U.S. Fish and Wildlife Service; DOUG BURGUM, in his official capacity as Secretary of the U.S. Department of the Interior,

Defendants.

Case No. 3:26-cv-1866

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

## INTRODUCTION

1. Plaintiffs Center for Biological Diversity, Friends of the Columbia Gorge, and Klamath-Siskiyou Wildlands Center (collectively, "Conservation Groups") challenge the failure of the U.S. Fish and Wildlife Service ("Service") to issue final listing rules for the northwestern pond turtle (*Actinemys marmorata*) and southwestern pond turtle (*Actinemys pallida*) (collectively, "pond turtles") in violation of the Endangered Species Act ("ESA"). The Service's failure to meet the nondiscretionary, congressionally mandated deadlines to issue final listing rules for the pond turtles delays lifesaving protections, thereby increasing their risk of extinction.

2. To remedy the Service's violations of the ESA, the Conservation Groups seek a Court order declaring that the Service violated section 4(b)(6)(A) of the ESA, 16 U.S.C. § 1533(b)(6)(A), by failing to issue timely final listing rules for the pond turtles and providing injunctive relief directing the Service to issue the final listing rules by a date certain.

## JURISDICTION AND VENUE

3. The Conservation Groups bring this action under the ESA, 16 U.S.C. §§ 1533, 1540(g).

4. This Court has jurisdiction to review this action under 16 U.S.C. § 1540(c), (g) (ESA citizen suit provision) and 28 U.S.C. §§ 1331 (federal question). This Court has authority to issue declaratory and injunctive relief pursuant to the ESA, 16 U.S.C. § 1540(g), Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, and Administrative Procedure Act, 5 U.S.C. § 706(2).

5. Venue is proper in this judicial district under 28 U.S.C. § 1391(b) and (e), as a substantial part of the acts or omissions giving rise to the claim occurred in this district.

6. Pursuant to Local Rule of Civil Procedure 3-2, this case is properly filed in the Portland Division because a substantial part of the events or omissions giving rise to the claim

occurred within the Portland Division; the northwestern pond turtle occurs in counties within the Portland Division; the Service's Portland Field Office was one of the two primary authors of the proposed listing rule; plaintiff Friends of the Columbia Gorge has its principal place of business in Portland, Oregon, within the Portland Division; and the Conservation Groups have members whose interests are harmed by the Service's failure to protect the northwestern pond turtle from threats within the Portland Division.

## PARTIES

7. Plaintiff CENTER FOR BIOLOGICAL DIVERSITY ("Center") is a national, nonprofit conservation organization that works through science, law, policy, and the media to protect imperiled species and their habitats. The Center is incorporated in California and headquartered in Tucson, Arizona, with offices throughout the United States, including in Portland, Oregon. The Center has more than 101,000 active members throughout the country, including many who live in Oregon and have interests in the pond turtles.

8. Plaintiff FRIENDS OF THE COLUMBIA GORGE ("Friends") is a nonprofit conservation organization that works to protect, preserve, and steward the Columbia River Gorge through conservation advocacy, litigation, land conservation, and community engagement. Friends is incorporated in Portland, Oregon, where its principal office is located, and also has offices in Hood River, Oregon, and Washougal, Washington. With support from approximately 4,500 members, Friends safeguards the Columbia River Gorge and ensures that the natural wonders found there today will be preserved for future generations.

9. Plaintiff KLAMATH-SISKIYOU WILDLANDS CENTER ("KS Wild") is a nonprofit conservation organization based in Ashland, Oregon dedicated to protecting and restoring the forests, watersheds, and wildlife of the Klamath-Siskiyou region of southwest

Oregon and northwest California, spanning the mountain ranges of the Klamaths, Siskiyous, and southern Cascades. KS Wild has nearly three decades of experience advocating for science-based conservation of public lands and wildlife species, and has longstanding interests in protecting imperiled native species and their habitats. KS Wild has over 3,500 members and supporters in more than 30 states, with most members in southern Oregon and northern California. On behalf of its members, KS Wild advocates for the forests, wildlife, and waters of the Rogue and Klamath River Basins and works to protect and restore the extraordinary biological diversity of the Klamath-Siskiyou region of southwest Oregon and northwest California.

10. Plaintiffs bring this action on behalf of their members who derive ecological, cultural, recreational, aesthetic, educational, scientific, professional, and other benefits from the pond turtles. Plaintiffs' members are deeply interested in and committed to the conservation of imperiled biologically and culturally significant species, including the pond turtles, and to the effective implementation of the ESA to protect those species. Plaintiffs' members recreate in and near areas traditionally home to pond turtles, frequently and on an ongoing basis in the future, and Plaintiffs' members have observed pond turtles in the wild.

11. Plaintiffs' members have been, are being, and will continue to be harmed by the Service's failure to issue timely final listing rules protecting the pond turtles as threatened species under the ESA. The injuries that Plaintiffs and their members have suffered are actual, concrete injuries, which are presently suffered and will continue to occur unless and until this Court grants relief.

12. For example, Sydney Wilkins is a member of the Center and KS Wild, and she currently works as the conservation attorney for KS Wild. Ms. Wilkins derives personal, professional, recreational, aesthetic, and conservation benefits from the continued existence and

recovery of the northwestern pond turtle. For both personal and professional purposes, Ms. Wilkins regularly visits aquatic and forested areas in the Klamath-Siskiyou bioregion of southwestern Oregon and northwestern California that constitute habitat for the species to observe northwestern pond turtles and their habitat. For example, in the summers of 2024, 2025, and 2026 Ms. Wilkins visited northwestern pond turtle habitat multiple times in Oregon, including Acorn Woman Lakes, Illinois River Forks State Park near Cave Junction, and Lithia Park in Ashland. Ms. Wilkins enjoys hiking along and kayaking these and other water bodies, and on her visits she frequently counts the turtles she observes basking on logs and rocks, looking specifically for northwestern pond turtles. On these trips, Ms. Wilkins has observed basking northwestern pond turtles. In addition, Ms. Wilkins enjoys floating and kayaking the Rogue River and hiking the Rogue River trail, and she recently observed basking northwestern pond turtles there in May 2026. Although she has seen northwestern pond turtles in the wild, Ms. Wilkins has also observed firsthand how habitat degradation and invasive species threaten the future of the northwestern pond turtle. For example, at the end of May 2026, she visited Acorn Woman Lakes and observed fewer basking structures, and thus fewer basking turtles, due to the U.S. Forest Service draining part of the lake. Ms. Wilkins plans to return to these and other habitat areas for the species multiple times in summer 2027, including definite plans to visit Acorn Woman Lakes in May 2027, as soon as it gets warm enough for the pond turtles to return to their basking sites. Ms. Wilkins's work is also directly tied to the continued existence of the northwestern pond turtle such that, if the species were lost or extirpated, her role as a conservation advocate would be diminished, and the interests of KS Wild and its members in protecting imperiled native wildlife species and biodiversity would be harmed, undermining the organization's mission. The Service's failure to issue the final rule listing the northwestern pond

turtle as a threatened species deprives the species of the timely protections Congress mandated under the ESA and increases the risk of the northwestern pond turtle's further decline or extinction, thereby harming Ms. Wilkins' ongoing interests in observing, enjoying, and conserving the species and its habitat.

13. As another example, Sara Woods is a member of both the Center and Friends. Mrs. Woods serves as Stewardship Program Manager for the Friends of the Columbia Gorge Land Trust, where she leads stewardship and habitat restoration efforts at the organization's Turtle Haven and Alashík Preserves, which support populations of the northwestern pond turtle. Mrs. Woods regularly observes, studies, monitors, and enjoys the northwestern pond turtle and its habitat and derives personal, professional, recreational, aesthetic, and conservation benefits from the species' continued existence and recovery. Among her responsibilities, Mrs. Woods leads population surveys, overseeing volunteer surveyors in safely releasing northwestern pond turtles from temporary water traps and monitoring the status of local populations. Outside of work, she regularly visits areas occupied by the northwestern pond turtle and seeks opportunities to observe the species while hiking. Mrs. Woods intends to continue visiting habitat for the species, including but not limited to the Turtle Haven and Alashík Preserves, indefinitely into the future to engage in stewardship, habitat restoration, and monitoring activities. She also values the northwestern pond turtle as part of her spiritual connection with nature. Through her restoration work, Mrs. Woods has firsthand knowledge of the threats facing the northwestern pond turtle, including invasive species, and understands that conservation absent federal ESA protection depends on uncertain state and private efforts. The Service's failure to issue the final rule listing the northwestern pond turtle as a threatened species deprives the species of the timely protections Congress mandated under the ESA, increases the risk of the species' further decline or

extinction, and thereby harms Mrs. Woods' ongoing interests in observing, enjoying, and conserving the northwestern pond turtle and its habitat.

14. Devlin Gandy is a member of the Center with longstanding personal and professional interests in the southwestern pond turtle and its habitat. Mr. Gandy grew up in Agoura Hills and spent much of his childhood and adolescence exploring the creeks, ponds, lakes, and other aquatic habitats of the Conejo Valley and surrounding Santa Monica Mountains, where he regularly observed southwestern pond turtles. He continued hiking throughout the region after high school and became involved in conservation efforts in the Santa Monica Mountains National Recreation Area through volunteer work with the National Park Service, California State Parks, and the Mountain Restoration Trust (now TreePeople). Through these experiences, he personally witnessed the disappearance or substantial decline of many pond turtle populations, including loss of approximately 90 percent of the populations in the Santa Monica Mountains region, due to development, habitat loss and fragmentation, pollution and water-quality degradation, vehicle strikes, invasive species, wildfire, and other threats. These losses contributed directly to the conservation focus of his subsequent professional, academic, and volunteer activities. Today, as Conservation Director of Keep the Sespe Wild, Mr. Gandy regularly advocates for southwestern pond turtle conservation and assists regional conservation organizations, including the Turtle Conservancy, with fieldwork concerning the species. Keep the Sespe Wild works to conserve Sespe Creek as a free-flowing river and protect its connected landscapes, tributaries, waterways, and wildlife habitats; Sespe Creek is one of Southern California's last major undammed river systems and supports one of the region's larger remaining southwestern pond turtle populations. Mr. Gandy regularly spends time in the Sespe watershed for recreation, wildlife observation, conservation, and fieldwork and has personally

observed significant impacts to southwestern pond turtle populations there in the last five years. He also serves on the Board of Directors of the Santa Barbara Wildlife Care Network, which annually receives dozens of southwestern pond turtles, including turtles rescued from fragmented suburban habitats and coastal beaches after flooding displaces them from viable inland habitat. Concerned about ongoing losses and habitat fragmentation in Ventura County, Mr. Gandy purchased property adjacent to the Sespe watershed for conservation purposes; the property supports a large resident southwestern pond turtle population, and he has partnered with the Turtle Conservancy to conduct annual fieldwork assessing population trends, individual health, and factors affecting survival. Mr. Gandy's continuing ability to observe, study, appreciate, and conserve southwestern pond turtles in places he regularly uses and values depends upon healthy, viable populations and suitable habitat. The Service's failure to issue the final rule listing the southwestern pond turtle as threatened deprives the species of timely protections mandated by Congress under the ESA, increases the risk of further population declines and habitat degradation, and thereby harms Mr. Gandy's ongoing interests in observing, appreciating, studying, and conserving the species and the ecosystems of which the species is a part.

15. The Service's failure to issue timely final listing rules protecting the northwestern and southwestern pond turtles as threatened species under the ESA leaves the pond turtles vulnerable to the ongoing loss and degradation of habitat that is critical for their survival and recovery. The relief sought herein—including an Order directing the Service to issue final listing rules by a date certain—would redress those harms. Plaintiffs and their members have no other adequate remedy at law.

16. Defendant U.S. FISH AND WILDLIFE SERVICE is a federal agency within the U.S. Department of the Interior. The Secretary of the Interior has delegated to the Service the

authority to conserve non-marine endangered and threatened species under the ESA. 50 C.F.R. § 402.01(b). This authority encompasses proposed and final listing determinations for the northwestern and southwestern pond turtles.

17. Defendant BRIAN NESVIK is the Director of the U.S. Fish and Wildlife Service and is charged with ensuring agency decisions comply with the law. Defendant Nesvik is sued in his official capacity.

18. Defendant DOUG BURGUM is the Secretary of the U.S. Department of the Interior ("Secretary") and has the ultimate responsibility to administer and implement the provisions of the ESA regarding the pond turtles and to comply with all other applicable federal laws. Defendant Burgum is sued in his official capacity.

## LEGAL BACKGROUND

### I. Endangered Species Act

19. The ESA is "the most comprehensive legislation for the preservation of endangered species ever enacted by any nation." *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 180 (1978). Its fundamental purposes are to provide "a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved" and "a program for the conservation of such endangered species and threatened species." 16 U.S.C. § 1531(b).

20. The Act directs the Secretary of the Interior, through the Service, to determine which species of plants and animals are "endangered" and "threatened" and place them on the list of protected species—otherwise known as "listing" a species. *Id.* § 1533.

21. The Secretary has delegated its administration of the Act to the Service for freshwater aquatic species, including the pond turtles. 50 C.F.R. § 402.01(b).

22. ESA Section 4 requires the Service to protect imperiled species by listing them as

"endangered" or "threatened." 16 U.S.C. § 1533(a)(1). A species is "endangered" when it is "in danger of extinction throughout all or a significant portion of its range." 16 U.S.C. § 1532(6). A species is "threatened" when it is "likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." *Id.* § 1532(20).

23. The Act defines "species" to include "any distinct population segment of any species of vertebrate fish or wildlife which interbreeds when mature." 16 U.S.C. § 1532(16).

24. The ESA requires the Service to determine whether any species is endangered or threatened because of any one of, or combination of, the following factors: (A) the present or threatened destruction, modification, or curtailment of its habitat or range; (B) overutilization for commercial, recreational, scientific, or educational purposes; (C) disease or predation; (D) the inadequacy of existing regulatory mechanisms; or (E) other natural or manmade factors affecting its continued existence. *Id.* § 1533(a)(1).

25. The Service must list a species if the species meets the definition of "endangered" or "threatened" due to "any one or a combination of" these five listing factors. 50 C.F.R. § 424.11(c); *see* 16 U.S.C. § 1533(a)(1).

26. If the Service determines that the species is not endangered throughout all its range, the ESA requires the agency to examine whether it is endangered or threatened throughout any "significant portion" of its range. *Id.* §§ 1532(6), (20).

27. The Service must make listing determinations "solely on the basis of the best scientific and commercial data available," *id.* § 1533(b)(1)(A), and may not allow for "economic considerations" when making "determinations regarding the status of species." H.R. Rep. No. 97-835, at 20 (1982).

28. The ESA allows any interested person to formally petition the Service to list a

species as endangered or threatened. 16 U.S.C. § 1533(b)(3)(A); 50 C.F.R. § 424.14(a).

29. To ensure the timely protection of species at risk of extinction, Congress set forth a detailed process whereby interested persons may petition the Service to list a species as endangered or threatened. 16 U.S.C. § 1533(b)(3). In response, the Service must publish a series of three decisions according to statutory deadlines.

30. First, within 90 days of receipt of a listing petition, the Service must, "to the maximum extent practicable," publish an initial finding as to whether the petition, "presents substantial scientific or commercial information indicating that the petitioned action may be warranted." *Id.* § 1533(b)(3)(A). This is known as the "90-day finding." If the Service determines in the 90-day finding that the petition does not present substantial information indicating that listing may be warranted, the petition is rejected, and the process concludes.

31. If the Service determines that a petition presents substantial information indicating that listing "may be warranted," the agency must publish that finding and proceed with a scientific review of the species' status, known as a "status review." *Id.*

32. Upon completing the status review, and within 12 months of receiving the petition, the Service must publish a "12-month finding" with one of three listing determinations: (1) listing is "warranted"; (2) listing is "not warranted"; or (3) listing is "warranted but precluded" by other proposals for listing species, provided certain circumstances are met. *Id.* § 1533(b)(3)(B).

33. If the Service determines that listing is "warranted," the agency must publish that finding in the Federal Register along with the text of a proposed regulation to list the species as endangered or threatened and to designate critical habitat for the species. *Id.* § 1533(a)(3)(A), (b)(3)(B)(ii). Within one year of publishing the proposed listing rule, the Service must publish

the final rule in the Federal Register, implementing its determination to list the species and designate critical habitat. *Id.* § 1533(b)(6)(A).

34. If the Service instead issues a finding that listing the species is "not warranted," the process concludes, and that finding is a final agency action subject to judicial review. *Id.* § 1533(b)(3)(C)(ii).

35. A species does not receive substantive protections under the Act until it is listed as endangered or threatened. Without these protections, endangered and threatened species continue to decline toward extinction and become more difficult to protect from the threat of extinction as their situations become even more dire.

36. Once a species is listed, the Act provides both procedural and substantive protections to ensure not only the species' continued survival, but also its ultimate recovery. For example, Section 4(a)(3) of the Act requires the Service to designate areas that are "essential to the conservation of the species" as "critical habitat," and to develop and implement recovery plans. *Id*. §§ 1533(a)(3), (f); 1532(5). In addition, Section 7(a)(2) of the Act requires all federal agencies to consult with the Service to ensure their actions do not "jeopardize the continued existence" of listed species or "result in the destruction or adverse modification" of their critical habitat. *Id.* § 1536(a)(2). ESA Section 9(a)(1)(B) makes it unlawful to "take" any endangered species, which means no person can "harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect" an endangered species without first receiving authorization from the Service. *Id.* §§ 1532(19), 1538. Thus, listing is the crucial first step in the ESA's system of species conservation and recovery.

## FACTUAL BACKGROUND

## I. The Threatened Northwestern and Southwestern Pond Turtles

### A. Taxonomic History

37. The scientific community previously recognized northwestern and southwestern pond turtles as a singular species called the western pond turtle, or Pacific pond turtle. Since 2017, the Service has accepted the western pond turtle as two distinct species: the northwestern pond turtle (*Actinemys marmorata*) and the southwestern pond turtle (*Actinemys pallida*). The northwestern pond turtle and southwestern pond turtle are two of only three freshwater aquatic turtle species native to western North America.

38. Much of the scientific literature, conservation history, and agency analyses concerning the pond turtles were developed before the taxonomic split. Unless otherwise indicated, references below to the "western pond turtle" encompass one or both of the species now recognized as the northwestern pond turtle and southwestern pond turtle.

### B. Shared Biology, Ecology, and Threats

39. Both the northwestern pond turtle and southwestern pond turtle are semi-aquatic turtles with dark brown to nearly black shells, often marked with spots, lines, or dashes, and yellow undersides with dark blotches. The southwestern pond turtle may generally be distinguished by lighter coloration along the sides of its neck and a reduced or absent inguinal scute, the plate connecting the shell to the underbelly near the groin.

40. Both western pond turtle species rely upon three interconnected habitat types throughout their life cycle: shallow aquatic habitat for feeding and refuge, waterside habitat for basking, and adjacent upland habitat for nesting and overwintering. The degradation or loss of any of these habitats reduces the pond turtles' survival and reproductive success.

41. Females typically lay a single clutch of one to thirteen eggs every year, though many individuals nest only in alternate (every other) years, and some pond turtles may produce a second clutch in a single year. Eggs generally incubate for approximately 80 to 126 days.

42. Hatchlings emerge in the fall or, if necessary, overwinter in their nests before emerging the following spring. Measuring approximately one inch long—roughly the size of a U.S. quarter—hatchlings may require several weeks to migrate from their nests to suitable aquatic habitat.

43. The first years of life are the most perilous. Juvenile mortality in some pond turtle populations reaches 85 to 90 percent during the first three years of life because hatchlings are especially vulnerable to predation and other environmental stressors before reaching maturity.

44. Western pond turtles are long-lived species with delayed reproductive maturity. Adults generally measure approximately 6.5 to 7 inches in shell length, although mature southwestern pond turtles exhibit more variation in size. Individuals have been documented to live as long as 60 years or more, though their maximum age is unknown. Adults also exhibit temperature-dependent sex determination. These characteristics render the species vulnerable to environmental disturbances and adult mortality.

45. Both pond turtle species face numerous threats, including wetland and upland habitat degradation, fragmentation, and loss; invasive predators and increased completion; altered hydrology; pathogens; human disturbance; pesticides; and the increasingly severe effects of climate change.

46. Habitat loss and fragmentation resulting from urban development, agriculture, logging, road construction, and other land-use changes have eliminated or degraded many

formerly occupied sites and continue to threaten remaining populations throughout the range of both species.

47. Nonnative species such as American bullfrogs (*Lithobates catesbeianus*) have become established throughout much of the range of both pond turtle species and are voracious predators of juvenile pond turtles. Bullfrog predation on hatchlings has been linked to observed population declines.

48. The introduction of nonnative bass as sportfish similarly has increased aquatic predation as well as incidental capture of pond turtles by recreational fishermen.

49. Both pond turtle species are vulnerable to the effects of altered hydrology resulting from dams and water diversions. Changes in water flow and temperature reduce habitat suitability, interfere with normal growth and thermoregulation, and may reduce juvenile recruitment.

50. Climate change exacerbates the existing threats facing both pond turtle species through increasingly severe and frequent droughts, excessive heat, flooding, and other extreme weather events, as well as wildfire and the drying and shrinking of critical freshwater habitats.

51. Drought is a particularly significant threat to the pond turtles. Reduced rainfall and higher temperatures dry up the pooled water and low elevation streams these semi-aquatic turtles depend on. When water sources disappear, the pond turtles face starvation, extreme dehydration, and toxic water conditions with low oxygen. Drought limits pond turtle movement between aquatic habitats, isolates populations, reduces food availability as shallow water bodies dry, and forces turtles to leave aquatic habitat in search of new ponds. Dry, degraded landscapes lack cover, making the pond turtles' long terrestrial journeys exhausting, deadly, and leaving weakened pond turtles more vulnerable to predators or starvation. Drought also may force

hatchlings to remain longer in upland nests, where they are more susceptible to terrestrial predators, starvation, and upland wildfire.

52. Hotter, drier conditions fuel intense wildfires that devastate local watersheds, destroy riparian vegetation, and kill juvenile and adult pond turtles that cannot escape fast enough or find safe upland cover.

53. Temperature is both sex- and survival-determinative for pond turtle eggs. When incubation temperatures exceed approximately 84° F for a substantial portion of development, female hatchlings become increasingly likely to result. Researchers estimate that maximum incubation temperatures of approximately 113° F result in approximately 90 percent egg unviability. Increasing temperatures therefore threaten both successful reproduction and long-term population viability.

**C. The Northwestern Pond Turtle's Range and Threats**

54. The northwestern pond turtle's current range extends from low-lying wetland areas surrounding Puget Sound in western Washington through western Oregon and northern and central California into western Nevada. Despite this relatively broad range, many local populations have declined, and complete extirpations have occurred in several regions.

55. For example, the Central Valley of California once supported upwards of 10 million pond turtles. Conversion of land for agriculture and industry destroyed substantial areas of suitable habitat. Habitat loss and fragmentation caused by logging and road construction have further eliminated or degraded many formerly occupied sites and continue to threaten remaining populations, particularly as these activities are increasing across much of the species' range.

56. In addition to the threats discussed above, the northwestern pond turtle faces significant disease-related threats from the fungus *Emydomyces testavorans*, which is associated

with ulcerative skin and shell lesions. Shell disease has been observed primarily among head-started turtles—those raised in captivity. Because many northwestern pond turtle populations, particularly in Washington, depend upon head-start programs as an important conservation measure, disease poses a substantial threat to ongoing recovery efforts.

57. Snapping turtles have also been shown to limit northwestern pond turtle distribution through much of southern Oregon, particularly in the Rogue River valley.

58. Agricultural pesticides, including organophosphates and carbamates, have been detected in northwestern pond turtle plasma and are associated with depressed cholinesterase enzyme activity, potentially impairing neurological function.

59. Altered hydrology associated with dams and water diversions has reduced growth and recruitment in some northwestern pond turtle populations. Colder water temperatures downstream of dams slow physical growth, and researchers have documented fewer juveniles in dammed tributaries than in comparable undammed systems.

60. Climate change exacerbates the existing threats to the northwestern pond turtle and poses especially acute risks in the southern portion of the northwestern pond turtle's range, where increasing temperatures and prolonged drought are expected to intensify existing threats.

**B. The Southwestern Pond Turtle's Range and Threats**

61. The southwestern pond turtle's current range extends from central and southern California into Baja California, Mexico.

62. Southwestern pond turtle populations have declined substantially and become increasingly fragmented throughout much of their range, with many remaining populations consisting of small, isolated groups.

63. Rapid urbanization throughout southern California has intensified habitat loss and fragmentation by isolating populations and restricting movement between aquatic and upland habitats. Development, especially around Los Angeles, Orange, Riverside, and San Diego Counties, has been a principal driver of the southwestern species' decline.

64. Although invasive predators threaten both pond turtle species, the threat is especially severe for the southwestern pond turtle because bullfrogs occupy the majority of habitat analysis units throughout its range and disproportionately prey upon juvenile turtles.

65. Climate change significantly harms southwestern pond turtles through more severe prolonged droughts, wildfires, and the shrinking of critical freshwater habitats.%

66. Extreme flooding also poses a significant threat to the southwestern pond turtle by displacing turtles from aquatic habitat, increasing mortality, destroying habitat, causing nest failure, and drowning hatchlings. In southern California, extreme flooding has been identified as a likely contributor to the extirpation of multiple local populations. Because pond turtle eggs are permeable, excessive soil moisture may cause eggs to rupture, causing further losses.

67. Altered streamflows caused by California dams also disrupt thermoregulation in the southwestern pond turtle. Sudden releases of deep, cold water force pond turtles to expend significant energy seeking more suitable aquatic habitat, which may ultimately prove unsuitable or insecure.

## II. <u>The Listing Petition and History</u>

68. On July 11, 2012, the Center for Biological Diversity petitioned the Service to list the western pond turtle as an endangered or threatened species because the best available science showed that the species is declining towards extinction due to extensive habitat degradation, predation and competition from non-native species, drought, and climate change.

69. On April 10, 2015, the Service published a positive 90-day finding that the petition presented substantial evidence that listing may be warranted and initiated a status review. 80 Fed. Reg. 19259 (Apr. 10, 2015). The Service based its conclusion on the present or threatened destruction, modification, or curtailment of its habitat or range. *Id.* at 19263.

70. In 2020, the Center for Biological Diversity filed a lawsuit (*Ctr. for Biological Diversity v. Haaland*, No. 1:20-cv-00573-EGS) challenging the Service's failure to issue timely listing determinations in response to petitions for 241 species, including the western pond turtle. The Service subsequently agreed in settlement to submit to the Federal Register the 12-month finding for the western pond turtle by September 30, 2023.

71. On October 3, 2023, the Service published a proposed rule recognizing the northwestern and southwestern pond turtles as separate species and proposing to list both species as threatened under the ESA due to various threats, including habitat loss, degradation and modification, predation, competition, and the effects of climate change. 88 Fed. Reg. 68370.

72. Pursuant to Section 4 of the ESA, the Service's deadline to issue final listing rules for the two pond turtle species was October 3, 2024.

73. With limited exceptions, the ESA requires the Service to issue a final listing rule within one year of a proposed listing rule. More than one year has now passed since the Service issued its proposed listing rule for the northwestern and southwestern pond turtles.

74. It has also been 14 years since the Service was first petitioned to list the species. During the Service's egregious, unlawful, and inexcusable delay in providing the protections demanded by the ESA, the northwestern and southwestern pond turtles have continued to suffer significant population declines and loss of habitat.

75. The Conservation Groups provided Defendants with 60-days' notice of these ESA violations, as required by 16 U.S.C. § 1540(g)(2)(C), by a letter dated June 26, 2026. Defendants have not remedied the violations set out in the notice letter, and an actual controversy exists between the parties within the meaning of the Declaratory Judgment Act, 28 U.S.C. § 2201.

## CLAIM FOR RELIEF

### *Violations of the ESA in Failing to Publish Timely Final Listing Rules for the Northwestern and Southwestern Pond Turtles*

76. The Conservation Groups reallege and incorporate by reference the preceding paragraphs.

77. With limited exceptions, the ESA requires the Service to publish a final listing rule implementing its determination to list a species within one year of a proposed listing rule. 16 U.S.C. § 1533(b)(6)(A).

78. In response to the 2012 petition to list the western pond turtle, the Service published a proposed rule to list the northwestern and southwestern pond turtles as threatened species under the ESA on October 3, 2023. Accordingly, the final rules implementing the Service's determination to list the two pond turtle species were due by October 3, 2024.

79. Defendants have not issued the statutorily required final rules for the northwestern and southwestern pond turtles.

80. Defendants' failure to perform their nondiscretionary duty to timely publish the final listing rules constitute violations of the ESA. 16 U.S.C. § 1533(b)(6)(A).

## PRAYER FOR RELIEF

WHEREFORE, the Conservation Groups respectfully request that this Court:

1. Declare that Defendants violated the ESA by failing to issue timely final listing rules for the northwestern and southwestern pond turtles;

2. Provide injunctive relief compelling Defendants to publish the final listing rules by a date certain;

3. Retain continuing jurisdiction to review Defendants' compliance with all judgments and orders herein;

4. Grant the Conservation Groups their reasonable attorneys' fees and costs as provided by the ESA, 16 U.S.C. § 1540(g)(4); and

5. Grant such other and further relief as the Court may deem just and proper.

Respectfully submitted this 9th day of September, 2026.

*/s/ Margaret E. Townsend*
Margaret E. Townsend (OR Bar No. 144463)
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211
tel: (971) 717-6409
mtownsend@biologicaldiversity.org

Andrew Baloga (OR Bar No. 245343)
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211
tel: (971) 717-6402
dbaloga@biologicaldiversity.org

*Attorneys for Plaintiffs*